## RECORD NO. 13-1970

### In The

# United States Court Of Appeals For The Fourth Circuit

## CECIL D. B. KING, JR.; CECILIA KING GRANT; CHARLENE KING PERDUE; GINA BEATE CERA KING; MURIEL KING DE'TOLES; CHRISTA KING; MATHIAS AHERNS; CYRIL D. B. KING,

*Plaintiffs - Appellants,*

### v.

## THE BANK OF NEW YORK MELLON,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

————————

### BRIEF OF APPELLANTS

————————

**W. Scott Greco**
**Frederick D. Greco**
**GRECO & GRECO, PC**
**1300 Old Chain Bridge Road**
**McLean, VA  22101**
**(703) 821-2777**

*Counsel for Appellants*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1970__     Caption: __King, Jr., et al.  v.  Bank of New York Mellon__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Cecil D. B. King, Jr., et al.__
(name of party/amicus)

_____

who is _____Appellants_____, makes the following disclosure:
(appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                         ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ W. Scott Greco                           Date:    August 16, 2013

Counsel for: Appellants

# CERTIFICATE OF SERVICE
****************************

I certify that on    August 16, 2013    the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Melissa Glassman, Esquire
John D. Wilburn, Esquire
Stephen N. Mulligan, Esquire
McGuire Woods LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102
703-712-5000

/s/ W. Scott Greco                                      August 16, 2013
        (signature)                                             (date)

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF JURISDICTION...................................................1

STATEMENT OF THE ISSUES........................................................1

STATEMENT OF THE CASE............................................................2

STATEMENT OF THE FACTS .........................................................4

SUMMARY OF THE ARGUMENT ................................................11

ARGUMENT ...................................................................................12

    I.    STANDARD OF REVIEW. ...............................................12

    II.    BNYM's STAMP ON THE BACK OF THE CERTIFICATES
    WAS AN ENDORSEMENT IN BLANK. .........................................12

        A.    Contrary to the Trial Court's finding, the reference in the
        stamp to "Received Payment" was not inconsistent with
        an endorsement in blank. ..........................................................15

        B.    The Trial Court's finding that BNYM's endorsement
        falls into the "otherwise specifies" exception to an
        endorsement was incorrect.......................................................16

    III.    BNYM WAS NOT DISCHARGED FROM LIABILITY
    UNDER N.Y. UCC § 3-603...............................................................17

i

A.    The First National Bank of Chicago (FNBC) issued the Certificates, not Morgan Guaranty which was a "validating agent" and an indorser on the backs.  As an indorser who was paying funds on the instruments, Morgan had recourse against the original issuer (FNBC), and therefore NY UCC Law § 3-601(3) explicitly did not apply. ........................................................................18

B.    Full "payment" was also not made because the Certificates were not surrendered as required by the fronts of the Certificates for payment. ......................................19

C.    The Bearers did not surrender the Certificates for payment, Morgan was not "discharged," and other parties such as the endorser Irving/BNYM were also not discharged pursuant to § 3-601(3) or 3-208.............................20

D.    The Trial Court improperly dismissed the probability that BNYM was acting as an agent for a customer when it received payment. ...................................................21

IV.   THE KING FAMILY DID NOT RELY ON AN ARGUMENT BASED UPON "CERTIFICATE OF DEPOSIT RECEIPTS." .........22

V.    BNYM'S PRIOR ENDORSEMENT GUARANTY BOUND THEM AS A GUARANTOR TO PAY THE CERTIFICATES. .......23

VI.   PAYMENT IS DUE ON THE ORIGINAL CERTIFICATES OF DEPOSIT WHICH WAS NOT COMPLETED BY IRVING/BNYM................................................................24

VII.  QUANTUM MERUIT, QUANTUM VALEVANT, AND UNJUST ENRICHMENT.................................................26

-ii-

CONCLUSION ............................................................................................27

REQUEST FOR ORAL ARGUMENT ..................................................27

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

Collins v. Gilbert,
    94 U.S. 753, 24 L. Ed. 170 (1876) ...............................................21

First Nat. Bank of Los Angeles v. United States,
    103 F.2d 188 (9th Cir. 1939) ..........................................................23

Hill v. Lockheed Martin Logistics Mgmt,
    354 F.3d 277 (4th Cir., 2004) ........................................................12

United States v. George,
    971 F.2d 1113 (4th Cir., 1992) ......................................................12

United States v. Guar. Trust Co. of N.Y.,
    293 U.S. 340 (1934)........................................................................23

**STATUTES:**

28 U.S.C. § 2106 ..................................................................................1

NY UCC Law § 1-103 ..............................................................15, 22, 24

NY UCC Law § 1-201(5) ...................................................................13

NY UCC Law § 1-201(20) .................................................................13

NY UCC Law § 3-204(2) ...................................................................13

NY UCC Law § 3-208 ........................................................................20

NY UCC Law § 3-401(2) ...................................................................14

NY UCC Law § 3-414 .............................................................14, 16, 24

iv

NY UCC Law § 3-416 ............................................................................... 23

NY UCC Law § 3-601 .......................................................................... 17, 18

NY UCC Law § 3-601(3) ................................................................... <u>passim</u>

NY UCC Law § 3-603 ............................................................................... 17

NY UCC Law § 3-605 ............................................................................... 19

NY UCC Law § 3-606 ............................................................................... 17

**RULE:**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 3

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal which is from a final Judgment of the U.S. District Court For The Eastern District of Virginia pursuant to 28 U.S.C. § 2106.

## STATEMENT OF THE ISSUES

1.      Was The Bank of New York Mellon (hereafter "BNYM") liable to Cecil D.B. King and the remainder of the Plaintiffs in the trial court (hereafter "the King Family") as holders of the Bearer Certificates of Deposit based on its endorsement on each of the said five Certificates?

2.      Was BNYM a holder when it received the $5,329, 213.90 on July 28, 1977?

3.      Was the First National Bank of Chicago (FNBC) discharged from liability for the five Certificates of Deposit (CD's) when the $5,329,291.90 was paid to BNYM?

4.      If BNYM was a holder, were they discharged from liability because the issuer (FNBC) of the CDs was discharged?

5.      Did BNYM have a duty to account to the holders of the Bearer Certificates of Deposit of what they had done with the $5,329,291.90?

6.      Did BNYM have a fiduciary duty to the holders of the five CDs?

7.    Did BNYM guarantee payment of the five CDs when if affixed its stamp on the back of each CD?

8.    Were the King Family third party beneficiaries who had a contractual right to have BNYM pay them the $5,329,291.90?

9.    Did BNYM owe the $5,329,291.90 to the King Family based on the theory of quasi-contract, specifically unjust enrichment?

## STATEMENT OF THE CASE

The King Family (the Appellants-Plaintiffs) are the holders of five original Bearer Certificates of Deposit with a face value of one million dollars each plus interest.  These Certificates from 1977, made payable to "Bearer," entitle the holder/bearer to collect the funds "on or after maturity" upon the "surrender" of the Certificates.  The Certificates were distributed to the King Family from their father Cecil D. B. King's estate.

$5,329,513.90 (the face value plus one year's interest on the Certificates) was paid by Morgan Guaranty and Trust Company of New York ("Morgan" - the agent for the First National Bank of Chicago on the Certificates) to Irving Trust Company on July 28, 1977, and both banks endorsed the back of the Certificates, thereby making them liable for payment under the UCC.  (Irving Trust Company's successor in interest is The Bank of New York Mellon (the Defendant-Appellee),

-2-

and both companies may sometimes hereafter be referred to as "BNYM" or "Irving/BNYM").

The underlying case was filed against BNYM for payment in Virginia state court, and was removed by BNYM to the U.S. District Court for the Eastern District of Virginia. BNYM's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) was denied. The following facts were proven true through discovery:

1.    The King Family are the Bearers of the original five Certificates of Deposit payable to Bearer which have not been stamped paid or cancelled.

2.    BNYM received the monies due on the Certificates and could not show that it paid the funds to the Bearers.

3.    BNYM endorsed the backs of the Certificates without restriction making them liable under the UCC to pay the funds to the Bearers.

The parties in District Court each filed Cross Motions for Summary Judgment. The trial Court granted BNYM's Motion for Summary Judgment and denied the King Family's Motion for Summary Judgment, and entered final judgment for BNYM dismissing the King Family's case.

## STATEMENT OF THE FACTS

1.      The King Family are the children and heirs of Cecil D. B. King ("Mr. King, Sr."), their father, who passed away on August 11, 1998 while living in Silver Spring, Maryland.  (JA p. 101, par. 1).

2.      The documents that the King Family contend are five certificates of deposit ("Certificates") were found in Mr. King, Sr.'s apartment. JA p. 101. Copies of the Certificates were attached to the King Family's Motion for Summary Judgment.  (JA pp. 148-157).   The King Family are in possession of the originals of the Certificates.  Corporate Designee of BNYM deposition (Sterling), Transcript, JA p. 178 (Deposition Exhibit 1 is attached to the transcript setting out the subject matters of the 30(b)(6) corporate designee deposition, JA pp. 241-244.)

3.      The First National Bank of Chicago issued the Certificates on July 28, 1976.  Each Certificate represented a deposit of one million dollars, which accrued interest at a rate of 6.5% annually for a period of one year, and matured on July 28, 1977.   The interest for this one year time period for each Certificate was $65,902.78.  (JA p. 101, par 3, 4).

4.      The Certificates were payable to the "order of bearer on or after maturity hereof…" The Certificates further state that:  "This Certificate is payable at this bank or through Morgan Guaranty Trust Company of New York upon the

surrender hereof."  The Certificates state that Morgan Guaranty Trust Company of New York ("Morgan Guaranty") was the "validating agent" for the Certificates. (JA pp. 101-102, par. 5, 6).

5.     The originals of the five Certificates were made available to the Trial Court for inspection with the stamps on the back shown to the Trial Court at the two Court Hearings.  See JA p. 62 and Docket 79 (transcript of Summary Judgment hearing) pp. 5-10.

6.     Copies of the original CD's, depending on where located in the record, may have the second page turned the wrong way.   To correct this situation and remove any question, the parties specified the location of the stamps on the back of the Certificates in their Joint Stipulation wherein they agreed:  "Each Certificate contains two stamps on its back.  The stamps are located on the same half of the back of each Certificate.  Specifically, the stamps are located on the back of each Certificate on the half of the Certificate which, when viewing the front of the Certificates, contains the signature of a representative of The First National Bank of Chicago." (Stipulation, JA p. 102, par 7, 8).  In other words, if one was reading the front of the Certificates and turned it over, the stamps would be on the right side of the Certificates.  Correct copies of the Certificates showing

-5-

this were attached to the King Family's Summary Judgment Memorandum, JA pp. 148-157.

7.    BNYM's Exhibit 1 to their Summary Judgment Motion had the back page reversed with the stamp on the back being at the other end from where the Stipulation said it was.  JA pp. 287-296.

8.    The Trial Court, citing the Exhibits 1-5 to the King Family's Summary Judgment Memorandum, incorrectly found that the Irving Trust stamp was "nearest to the top lengthwise edge of the CD."  JA p. 1300.  If the side of the Certificate that the Trial Court found was the "top" was actually the "top," then the Irving/BNYM stamps were placed upside down, and further the Irving/BNYM stamp and the Morgan stamp are upside down to each other.  At best one cannot determine which edge was the top of the back of the Certificates, and the parties had not stipulated to either edge being the "top."  The Court then stated that the Morgan Guaranty stamp "appears below the above stamp," and makes no mention of the fact that the stamps were facing opposite directions.

9.     One stamp on the back of the Certificates states as follows:

RECEIVED PAYMENT 1-67
All prior Endorsements Guaranteed
JUL 28 1977
IRVING TRUST COMPANY
MONEY MARKET SAFEKEEPING
DEPT.
1-67

(Stipulation, JA p. 102, par 9).

10.     The number "1-67" represented the Federal Reserve identification number for Irving Trust Company ("Irving Trust").   The Bank of New York Mellon ("BNYM") is the successor in interest to Irving Trust.  (Stipulation, JA p. 102, par. 10, 11).  BNYM may sometimes be referred to as Irving/BNYM.

11.     The other stamp states as follows:

MORGAN GUARANTY TRUST COMPANY
OF NEW YORK
TELLERS DEPARTMENT 23 WALL ST

JP Morgan Chase & Co. is the successor to Morgan Guaranty. (Stipulation, JA p. 102, par. 11, 12).

12.     The document that the King Family contend is a credit ticket ("Credit Ticket") related to the Certificates was also found in Mr. King, Sr.'s apartment. The Credit Ticket is attached hereto as Exhibit 6.  The Credit Ticket contains the

label "M.G.T. Co. of N.Y." in the top, left–hand corner, signifying that it is a Morgan Guaranty Credit Ticket.  (Stipulation, JA pp. 102-103, par. 14, 15).

13.    The Credit Ticket reflects a transfer of $5,329,513.90 from Morgan Guaranty to Irving Trust on July 28, 1977, and references "confirmation of phone request" and "payment of com. paper or CD's."  (Stipulation, JA p. 103, par. 16). Irving Trust received payment on the Certificates on July 28, 1977.  (Corporate Designee of BNYM deposition (Sterling), JA p. 190).

14.    BNYM does not have any documents showing that Irving Trust (and its successors) paid the $5,329,513.90 it received on the Certificates to any person or entity, and BNYM is not aware of any fact witnesses that have knowledge of any payment by Irving Trust (and its successors) of the $5,329,513.90 to any person or entity. (Corporate Designee of BNYM deposition (Sterling), JA pp. 200-201).

15.    Mr. King, Sr. died testate leaving a Last Will and Testament dated December 31, 1997 with one Codicil dated July 25, 1998 (collectively, the "Will"). The Will was admitted to probate, and the estate of Mr. King, Sr. ("Estate") was opened on January 20, 1999 in the Orphans' Court of Montgomery County, Maryland ("Orphans' Court"). The Certificates are not specifically referenced in the Will, and the King Family claim an interest in them pursuant to the residuary

-8-

clause in "Item 13" of the Will and further claim an interest in the Certificates due to the fact that the Certificates were distributed or made available to them by the Executrix of the Estate, and the King Family currently are in possession of the Certificates.  (Stipulation, JA 103, par. 17-19).

16.    The King Family's cousin, Anna Cooper-Harris ("Ms. Harris"), was designated as the Executrix of the Estate under "Item 14" of the Will.  Ms. Harris was appointed personal representative of the Estate by the Orphans' Court. (Stipulation, Docket # 51, par. 20, 21).

17.    Ms. Harris distributed or otherwise made the Certificates and Credit Ticket available to the King Family on or around February of 1999. (Stipulation, Docket #51, par. 22).

18.    At the time they were distributed or made available, the Certificates and Credit Ticket were contained among boxes of cancelled checks and other documents that had been earmarked as trash by Ms. Harris.  Plaintiff Cecilia King Gantt ("Ms. Gantt") came into possession of the Certificates in February 1999, and the Certificates have been in her possession, custody, or control since that time. Ms. Gantt possesses the Certificates on behalf of herself and her siblings (the King Family).  (Stipulation, Docket #51, par. 23-24).

19.    The King Family was involved in Estate litigation in Liberia and the

U.S. from 1999-2008.  See Estate Record, JA pp. 599-604.

20.    In response to a July 28, 2010 letter sent by counsel for the King

Family to BNYM's General Counsel's office regarding the Certificates, BNYM's

legal department sent an August 12, 2010 letter (JA p. 159) which stated in part as

follows:

> "We have researched this matter and from the documentation
> provided, we have determined that in July 1977 Irving Trust Company
> ("Irving") bought the certificates of deposit from Morgan Guarantee.
> On July 28, 1977, the stamps were placed on the back of the bonds,
> and the bonds were physically delivered to our client..."

(Corporate Designee of BNYM deposition (Sterling), JA pp. 202-205).

21.    The Trial Court quoted from the above letter in a footnote on page 3

of its Opinion (JA p. 1301) as follows:

> "We [BNYM] have researched this matter and from the
> documentation provided, we have determined that in July 1977, Irving
> Trust Company ("Irving") bought the certificates of deposit from
> Morgan Guarantee.  Only July 28, 1977, the stamps were placed on
> the back of the bonds, and the bonds were physically delivered to our
> client [ITC/BNYM]."

The "[ITC/BNYM]" was inserted by the Trial Court, and was not in the original

letter.  The Trial Court's position that BNYM was its own client defies logic and

the definition of "client."  BNYM took the position in its letter that it delivered the

-10-

Certificates to "our client."  The Trial Court had no factual basis for making a finding (by inserting a name in a letter) that BNYM was its own client.

22.    BNYM now claims that the facts stated in the August 12, 2010 letter from its legal department are incorrect.  (Corporate Designee of BNYM deposition (Sterling), JA pp. 209-210).

23.    BNYM's Money Market Safekeeping Department is used for custody services which means money being held on behalf of a customer.   (Corporate Designee of BNYM deposition (Sterling), JA p. 218).

## SUMMARY OF THE ARGUMENT

The Trial Court erred in granting BNYM's Motion for Summary Judgment, and denying the King Family's Motion for Summary Judgment, for the following reasons:

A.    The stamp on the back of the Certificates placed by Irving/BNYM constituted an indorsement in blank which created liability for payment on the Certificates for Irving/BNYM to the Bearers under the New York UCC law.

B.    The payment by Morgan Guaranty to Irving/BNYM did not discharge Irving/BNYM's liability as an indorser on the Certificates because Morgan was not the issuer and thus the issuer was not discharged, the Certificates

-11-

were not surrendered as required on their face for payment, and Irving/BNYM received the funds as an agent for the Bearers.

       C.     BNYM is alternatively liable under contract and quasi contract to the Bearers of the Certificates for the monies BNYM received.

## ARGUMENT

### I.    STANDARD OF REVIEW.

The review of the District Court's granting of summary judgment is *de novo*. Hill v. Lockheed Martin Logistics Mgmt, 354 F.3d 277, 283 (4th Cir., 2004). "By definition, de novo review entails consideration of an issue as if it had not been decided previously." U.S. v. George, 971 F.2d 1113, 1118 (4th Cir., 1992).

### II.    BNYM's STAMP ON THE BACK OF THE CERTIFICATES WAS AN ENDORSEMENT IN BLANK.

Contrary to the explicit requirements of the New York UCC, the Trial Court found that the stamp placed on the back of the Certificates by Irving Trust (now BNYM) was not an endorsement in blank. (The parties have agreed that the Certificates are governed by New York UCC law).

By placing its stamp on the back of the Certificates, BNYM endorsed the Certificates thereby making it liable under the UCC to pay the amounts due to the Bearer of the Certificates (the King Family).

-12-

A "bearer" is defined in the UCC as "the person in possession of an instrument, document of title, or certificated security payable to bearer or indorsed in blank," and a "holder" is more broadly defined as a "person who is in possession of a document of title or an instrument or an investment certificated security drawn, issued or indorsed to him or to his order or to bearer or in blank." NY UCC Law § 1-201(5) and (20) (2012). Because they are in possession of the original Certificates, the King Family are holders and bearers of the Certificates.

As shown by the Certificates (and the facts above), Irving Trust (now BNYM) stamped the Certificates as follows:

> "RECEIVED PAYMENT 1-67
> All prior Endorsements Guaranteed
> JUL 28 1977
> IRVING TRUST COMPANY
> MONEY MARKET SAFEKEEPING
> DEPT. 1-67"

By endorsing the back of the certificates in this manner, Irving/BNYM agreed under the UCC to make payment under the Certificates to the holders/bearers. First, in regard to the requirements for an endorsement, NY UCC Law § 3-204(2) (2012) states: "An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed." The UCC requirement for a "signature" is "[a]

-13-

signature is made by use of any name, including any trade or assumed name, upon an instrument by any word or mark used in lieu of a written signature." NY UCC Law § 3-401(2) (2012).

The Irving stamp on the back of the Certificates meets the requirement of a signature indorsement in blank. It is a mark made in Irving/BNYM's name without any restrictions of payment in regard to the endorsement.

As an indorser in blank, Irving/BNYM agreed to pay the funds to the holders of the bearer certificates under NY UCC Law § 3-414 which states:

> "Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so."

As set out in the fact section above, Morgan paid the Certificate funds ($5,329,513.90) to Irving/BNYM who endorsed the backs of the Certificates on the same date, July 28, 1977. BNYM was unable in the trial Court to produce any document or fact witness that showed that Irving/BNYM paid the monies to anyone after receiving them. The holders/bearers (the King Family) are therefore entitled to collect the funds from the party that endorsed the Certificates, and thereby agreed to make payment of the Certificates to the holders/bearers.

-14-

**A.    Contrary to the Trial Court's finding, the reference in the stamp to "Received Payment" was not inconsistent with an endorsement in blank.**

Without any citation to authority other than the Code, the Trial Court dismissed the King Family's claim that Irving/BNYM's stamp was an indorsement due to its inclusion of the words "Received Payment."  The Trial Court found that "That notation is fundamentally inconsistent with any notion that there are amounts still payable under the CDs…"

The Trial Court's position ignores multiple scenarios in which a Bearer could present a bearer CD to a bank to as an agent to obtain payment from the issuer bank, the agent bank could indorse the bearer CD, receive payment from the issuing bank, and hold the funds for the Bearers/Owners of the CD.  Such a scenario is consistent, not inconsistent, with the Irving stamp which specifically states that it was placing the funds in its Moneymarket Safekeeping Department, not its own account.

The application of agency law is also clearly contemplated and allowed by the UCC.  Specifically, N.Y. UCC Law 1-103 states that "Unless displaced by the particular provisions of this Act, the principles of law and equity, including … principal and agent, …shall supplement its provisions."

-15-

The "Received Payment" portion of the stamp is actually the foundation for Irving/BNYM creating its own liability on the Certificates by indorsing it in blank. It would have had no obligation on the Certificates until it received the funds, and it then established its obligation to pay the funds to the Bearer after it received them by indorsing the Certificates. Furthermore BNYM conceded that it then delivered the Certificates to its client (and not Morgan) in its letter to the King Family's counsel. JA p. 159.

### B. The Trial Court's finding that BNYM's endorsement falls into the "otherwise specifies" exception to an endorsement was incorrect.

The Trial Court also relies upon an exception in the UCC section mandating liability by an indorser under NY UCC Law § 3-414. That exception states "Unless the indorsement otherwise specifies (as by such words as "without recourse")…" The exception explicitly gives an example and means of avoiding indorser liability ("without recourse"), yet no such language appears in Irving/BNYM's stamp.

Contrary to the use of such terms as "without recourse," the Irving/BNYM stamp does not "otherwise specify" that it does not intend to be an indorsement. In fact the opposite is true. By stating that Irving/BNYM received payment and placed it in a moneymarket safekeeping department, the stamp explicitly states that

-16-

a final payment on the CDs has not been made and that Irving/BNYM is holding the funds for another party.

Accordingly, contrary to the finding of the Trial Court, the indorsements on the back of the Certificates are enforceable against the indorser (BNYM) for payment on the Certificates.

### III.    BNYM WAS NOT DISCHARGED FROM LIABILITY UNDER N.Y. UCC § 3-603.

The Trial Court further finds that even if the Irving/BNYM stamp was an indorsement,  pursuant to the UCC in New York, the King Family is not entitled to payment under their original Bearer Certificates of Deposit because Morgan Guaranty has been "discharged" thereby discharging all parties, including Irving/BNYM. JA pp. 1308-1310.  The Trial Court takes this position despite the fact that Morgan paid $5,329,513.90 in funds to Irving/BNYM who cannot show that it ever paid those funds to the holders/bearers of the Certificates.

The Trial Court relies on NY UCC Law § 3-601(3) (2012) which states "The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument…(b) is discharged under any provision of this Article, except as otherwise provided with respect to discharge for impairment of recourse or of collateral (Section 3—606)."  For the reasons below, 3-601 is not applicable to this case.

-17-

**A.    The First National Bank of Chicago (FNBC) issued the Certificates, not Morgan Guaranty which was a "validating agent" and an indorser on the backs. As an indorser who was paying funds on the instruments, Morgan had recourse against the original issuer (FNBC), and therefore NY UCC Law § 3-601(3) explicitly did not apply.**

The Trial Court conflates two different parties as one – The First National Bank of Chicago and Morgan Guaranty. As set out in the facts above and shown by the face of the Certificates, the Certificates were issued by the First National Bank of Chicago, and Morgan Guaranty is only listed on the front as the "validating agent."

The Trial Court finds a discharge of BNYM under NY UCC Law § 3-601 which requires a finding that the payer (Morgan Guaranty) was a "party" to the instrument with "no right of action or recourse on the instrument." Morgan Guaranty, however, was not the issuing bank on the Certificates (with the associated liability for payment), the First National Bank of Chicago was. As the "validating agent," who also happened to be an indorser on the Certificates (stamps on the back), Morgan Guaranty would have recourse on the Certificates against the bank who issued them, The First National Bank of Chicago. As an indorser who was paying funds on the Certificates, Morgan Guaranty had recourse against the original issuer of the Certificates, the First National Bank of Chicago.

-18-

Because Morgan had recourse, § 3-601(3) does not apply, Morgan is not

discharged, and other endorsers including Irving/BNYM are not discharged.

> **B.    Full "payment" was also not made because the Certificates were not surrendered as required by the fronts of the Certificates for payment.**

Contrary to the explicit terms of the Certificates, the Trial Court found that

payment on the Certificates could be made without surrender of the instruments.

The Certificates specifically state "This Certificate is payable at this bank or

through Morgan Guaranty Trust Company of New York upon the surrender

hereof."  Notably, the Certificates state "through" Morgan, not "by" Morgan.

Morgan paid the funds to another bank, Irving/BNYM, without taking back

or cancelling the original bearer certificates which were required on their face to be

surrendered upon payment.  Rather than the Certificates being cancelled by

Morgan, Irving, or the First National Bank of Chicago upon payment, they were

instead endorsed by Irving/BNYM, thereby agreeing to make payment on the

Certificates to the Bearer.

If a party involved had wished to cancel the instrument at the time, the UCC

set out a clear means of doing so.  NY UCC Law § 3-605 allows the holder to

cancel an instrument "in any manner apparent on the face of the instrument or the

indorsement, as by intentionally cancelling the instrument or the party's signature

by destruction or mutilation, or by striking out the party's signature." This has clearly not been done.

The Trial Court finds at footnote 19 at JA p. 1309 that Morgan's stamp indicates that the Certificates were surrendered to Morgan. However, this finding is unsupported by a review of the actual Certificates (JA pp. 148-157) which at best are unclear of the order of the stamps on the Certificates which are upside down to each other. (As noted in the Fact section above, the Trial Court's finding that the Morgan stamp is below the Irving/BNYM stamp is without factual basis and clearly erroneous). The Court ignores the possible fact that Morgan, as the "validating agent," endorsed the Certificates before or during issuance, and prior to the Irving/BNYM stamp.

> **C.  The Bearers did not surrender the Certificates for payment, Morgan was not "discharged," and other parties such as the endorser Irving/BNYM were also not discharged pursuant to § 3-601(3) or 3-208.**

The requirement for surrender of the Certificates prior to discharge is specifically addressed on the front of the Certificates which state that payment will be made to Bearer "on or after maturity" and shall be payable "upon surrender hereof." The face of the instrument requires surrender of it by bearer for payment, which clearly has not occurred since the Certificates are not in the possession of

either Morgan, the First National Bank of Chicago, or the endorser, Irving/BNYM.

BNYM has also presented no evidence that the Certificates were lost or stolen.

The fact of possession of the original instruments by the King Family is

*prima facie* evidence that they are the proper owners (and thus that the Certificates

had not been surrendered).  As stated by the U.S. Supreme Court:

> "Possession of such an instrument payable to bearer, or indorsed in blank, is *prima facie* evidence that the holder is the proper owner and lawful possessor of the same; and nothing short of fraud, not even gorss [sic] negligence, if unattended with *mala fides*, is sufficient to overcome the effect of that evidence, or to invalidate the title of the holder supported by that presumption. [citations omitted]"

Collins v. Gilbert, 94 U.S. 753, 754, 24 L. Ed. 170 (1876).

The Bearers did not surrender the Certificates for payment, Morgan was not

"discharged," and other parties such as the endorser Irving/BNYM were also not

discharged pursuant to § 3-601(3).  In other words, Irving/BNYM should not be

allowed to keep the five million dollars that was supposed to be paid to the bearers

of the Certificates.

### D. The Trial Court improperly dismissed the probability that BNYM was acting as an agent for a customer when it received payment.

For discharge under § 3-601(3) to apply, the Trial Court had to find that

BNYM was a holder of the instrument when it received the funds.  In response to

the King Family's claim that the Irving/BNYM stamp (showing a deposit in the

-21-

moneymarket safekeeping department) is evidence that Irving BNYM was acting

as an agent of a customer, the Trial Court stated that "It is immaterial to ITC's

status as a holder whether it was acting in that capacity as a principal or an agent."

JA p. 1309.

Irving/BNYM's stamp clearly indicates that it is not receiving the funds for

its own account, but on behalf of another.  Principal and Agency law expressly

supplements UCC law unless displaced by a provision of the UCC.  NY UCC Law

§ 1-103.

The fact that the King Family currently possess the original Certificates

which have not been canceled or surrendered further support Irving/BNYM's

agency status.  Because they received funds as an agent, and endorsed the backs of

the Certificates, Irving/BNYM was not a Holder of the Certificates and was not

discharged.

## IV.    THE KING FAMILY DID NOT RELY ON AN ARGUMENT BASED UPON "CERTIFICATE OF DEPOSIT RECEIPTS."

The Trial Court's Opinion addresses a "Certificate of Deposit Receipt"

claim on pages 6-8 of the Opinion (JA pp. 1304-1306).   However, as explicitly

stated by the King Family in its Summary Judgment Memoranda (JA p. 1228), the

King Family did not and does not rely upon any such argument.  As set out above,

the King Family seeks recovery under the New York UCC for payment on the

-22-

original bearer Certificates of Deposits which they currently hold, and under

alternate theories of recovery addressed below.

## V.   BNYM'S PRIOR ENDORSEMENT GUARANTY BOUND THEM AS A GUARANTOR TO PAY THE CERTIFICATES.

The Trial Court dismisses the King Family's claim of a guaranty by

Irving/BNYM by stating that the "All Prior Endorsements Guaranteed" part of the

stamp only guaranteed that the "endorsers' signatures were valid and not

forgeries."  The Trial Court relied upon the cases of United States v. Guar. Trust

Co. of N.Y., 293 U.S. 340, 349 (1934) and First Nat. Bank of Los Angeles v.

United States, 103 F.2d 188, 191 (9th Cir. 1939).

The First Nat. Bank of Los Angeles case cites to and relies upon the United

States v. Guar. Trust Co. of N.Y. case, and the Guar. Trust Co. of N.Y. case

actually supports a finding of liability by the endorser who stamps the Certificate

with a "prior endorsements guaranteed" stamp.  As noted by the quote relied upon

by the Trial Court, the U.S. Supreme Court found that the express guaranty of prior

endorsements meant the same as an unrestricted endorsement – "to give the holder

a legal title and the right to enforce payment of the check."  United States v. Guar.

Trust Co. of N.Y., 293 U.S. 340, 349 (1934).

NY UCC Law § 3-416 (2012) governs the liabilities of guarantors on

negotiable instruments.  Section 1 relates to "Payment guaranteed" and Section 3

-23-

states "Words of guaranty which do not otherwise specify guarantee payment."

Contrary to Defendant's argument, the words used by Irving/BNYM were not

"signature" guaranteed, but were instead a guarantee of prior "endorsements."  As

set out above, an "endorsement" on a Certificate has the effect of agreeing to make

payment to the holder on the Certificate.  NY UCC Law § 3-414.  By guaranteeing

prior endorsements (Morgan), Irving/BNYM guaranteed the payment by Morgan,

and thereby agreed itself to make payment on the instruments to the holders.

## VI.    PAYMENT IS DUE ON THE ORIGINAL CERTIFICATES OF DEPOSIT WHICH WAS NOT COMPLETED BY IRVING/BNYM.

The Trial Court acknowledges that the King Family contends that they are

the third party beneficiaries of the contract between FNBC and Irving/BNYM.

The Court then ruled that as a matter of law there is a complete absence of

evidence to support the claim. JA p. 1312.

As contemplated by the UCC, the King Family's causes of action related to

the Certificates are not limited to recovery under the UCC.   N.Y. UCC Law 1-103

states that "Unless displaced by the particular provisions of this Act, the principles

of law and equity… shall supplement its provisions."

-24-

The facts relied upon by the King Family which evidence an agreement by Irving/BNYM to pay the funds to the Bearers are:

1.      Irving/BNYM admits it received the $5,239,219.90 on July 28, 1977.

2.      The five CD's presented by the King Family as valid Bearer Certificates of Deposit are authentic.

3.      The letter of August 12, 2010 that the King Family received from Irving/BNYM was never found by the Court to be not valid, and the Trial Court specifically states at footnote 17 of its Opinion that the letter did not change the legal consequences of the fact of payment. JA p. 1309.  The letter stated:  "On July 28, 1977, the stamps were placed on the back of the bonds, and the bonds were physically delivered to our client."  Irving/BNYM could not have delivered the Certificates to its client without some form of agreement or contract.  The stamps by Irving/BNYM and delivery of the Certificates meets the requirements for a contract.

4.      That the King Family are the present holders/bearers of the Bearer Certificates that were delivered by Irving/BNYM to their client.

5.      ITC/BNYM has been unable to offer any evidence that it paid the $5,329,219.90 to anyone since they received it in 1977 and stamped the back of

-25-

each of the CD's that the money was deposited in their Money Market Safekeeping Department.

The Trial Court stated that there were no facts in the record that would allow a reasonable fact finder to find the existence of a contract. The above facts do establish a contractual obligation for BNYM to pay the funds it received to its "client" (i.e. the individuals currently holding the Bearer Certificates).

## VII.   QUANTUM MERUIT, QUANTUM VALEVANT, AND UNJUST ENRICHMENT.

The Trial Court found at page 15 of its Opinion that "there is no evidence that the Defendant's alleged enrichment came at Plaintiffs' expense." JA p. 1313. However, the evidence is uncontested that ITC/BNYM received the $5,239,219.90 due on the Certificates and that the King Family are the Bearers of the authentic original Certificates which have not been marked paid or cancelled.

Irving/BNYM further admitted in its August 12, 2010 letter that it gave the Certificates to its client. The King Family are presenting the Bearer Certificates of Deposit for payment. A person holding a Bearer Certificate of Deposit does not have to prove any of the original funds came from current holder of the Certificates. As the Bearers of the Certificates who are owed the money in Irving/BNYM's safekeeping department, BNYM has been enriched at the King Family's expense and thus owes the money under quasi contract theories.

-26-

## CONCLUSION

For the foregoing reasons, the King Family requests that the District Court's granting of BNYM's Motion for Summary Judgment be reversed, that the District Court's denial of the King Family's Motion for Summary Judgment be reversed, and that the King Family's Motion for Summary Judgment be granted with judgment entered against BNYM in the amount of $5,329,513.90 plus interest and costs.

## REQUEST FOR ORAL ARGUMENT

The King Family hereby requests that their counsel be allowed to argue this matter orally before the Court.

This the 24th day of September, 2013.

/s/W. Scott Greco
W. Scott Greco (VSB # 37341)
wsgreco@grecogrecolaw.com
Frederick D. Greco (VSB #4812)
GRECO & GRECO, P.C.
1300 Old Chain Bridge Road
McLean, Virginia  22101
Telephone (703) 821-2777
Facsimile (703) 893-9377

*Counsel for Appellants,*
*Cecil D. B. King, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

this brief contains 5,645 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using
Microsoft Word in 14 point Times New Roman.


/s/ W. Scott Greco
W. Scott Greco

Dated:  September 24, 2013

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 24, 2013 I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send

notice of such filing to the following registered CM/ECF users:

> Anastasia P. Cordova
> Stephen P. Mulligan
> John D. Wilburn
> McGuireWoods, LLP
> 1750 Tysons Boulevard
> Suite 1800
> Tysons Corner, VA  22102
> (703) 712-5004
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/ *Karen R. Taylor*
> Karen R. Taylor
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219